**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Estrada and Carman Estrada, husband and wife; and Othon Luna and Estella Luna, husband and wife,<br><br>  Plaintiffs,<br><br>vs.<br><br>City of San Luis, an Arizona municipal corporation; Rural/Metro Fire Department Inc., an Arizona corporation; CT Corporate System, an Arizona corporation; Rural/Metro Protection Services, Inc., an Arizona corporation; Rural Metro (Delaware) Corporation (FN), a Delaware corporation; and Rafael Torres and Jane Doe Torres, in their personal capacities,<br><br>  Defendants. | No. CV-07-1071-PHX-DGC<br><br>**ORDER** |

Defendants have filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. ##19, 22. Responses and replies have been filed. Dkt. ##40-41, 43-44. The Court will grant the motions.[1]

**I.   Background.**

Plaintiffs Frank Estrada and Othon Luna worked for the City of San Luis fire

---

[1] The requests for oral argument are denied because the parties have thoroughly briefed the issues and oral argument will not aid the Court's decision. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

1  department. Estrada was a Battalion Chief and Luna was the Fire Chief. Plaintiffs were
2  terminated in 2006.

3  Plaintiffs commenced this action by filing a complaint against Rural/Metro Fire
4  Department Inc., Rural/Metro Protection Services, Inc. and Rural Metro (Delaware)
5  Corporation (FN) (collectively, "Rural/Metro"), the City of San Luis ("City"), Rafael and
6  Jane Doe Torres, and CT Corporate System. Dkt. #1. Plaintiffs' amended complaint asserts
7  seventeen claims: wrongful termination, retaliation, negligence per se, intentional
8  interference with contract, breach of the covenant of good faith and fair dealing, intentional
9  and negligent infliction of emotional distress, invasion of privacy, defamation, negligent
10 supervision and retention, false light invasion of privacy, violation of federal civil rights,
11 violation of state civil rights, violation of A.R.S. § 38-431, breach of contract, punitive
12 damages under federal law, punitive damages under state law, and loss of consortium.

13 **II.   Rule 12(b)(6) Standard.**

14 Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory
15 or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*
16 *Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Dismissal also is appropriate when
17 the plaintiff has included allegations disclosing some absolute defense or bar to recovery.
18 *Weisbuch v. County of L.A.*, 119 F.3d 778, 783 & n.1 (9th Cir. 1997). When analyzing a
19 complaint under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and
20 construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d
21 1213, 1217 (9th Cir. 1996). The court may not assume, however, that the plaintiff can prove
22 facts different from those alleged in the complaint. *Jack Russell Terrier Network of N. Cal.*
23 *v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005).

24 **III.  Plaintiffs' Allegations.**

25 Plaintiffs allege the following facts, which the Court will accept as true for purposes
26 of these motions:

27 In May 1998, Plaintiffs terminated Rafael Torres from his job in the City's fire
28 department. Torres subsequently was elected to the City Council. Rural/Metro has a

- 2 -

1  contract with the City to provide ambulance services.  Torres instructed Rural/Metro to file
2  a complaint with the City falsely accusing Plaintiffs of violating the terms of the contract.
3  The filing of the complaint was to be a *quid pro quo* for the City's renewal of the
4  Rural/Metro contract.  Rural/Metro accordingly sent a letter to the City asserting that the fire
5  department, under Plaintiffs' supervision, was violating the terms of the contract between
6  Rural/Metro and the City.  Dkt. #6 ¶¶ 24-29.  In response to the letter, the City began a
7  "results-oriented" investigation that ultimately led to Plaintiffs' terminations.  The City also
8  referred the matter to the Arizona Attorney General for criminal investigation.  No criminal
9  conduct was found.  *Id.* ¶¶ 30-31.

10 **IV.    Rural/Metro's Motion to Dismiss.**

11       Plaintiffs concede that the following seven claims may not be brought against
12 Rural/Metro: wrongful termination, retaliation, breach of the implied covenant of good faith
13 and fair dealing, violation of federal civil rights, violation of state civil rights, violation of
14 A.R.S. § 38-431, and breach of contract (Counts I-II, V, XI-XIV).  Dkt. #40 at 3-4.  The
15 Court will grant Rural/Metro's motion with respect to these claims.

16       Rural/Metro argues that the remaining claims are barred by Noerr-Pennington
17 immunity on the ground that the filing of the letter with the City constitutes direct petitioning
18 activity protected by the First Amendment right to petition the government for redress of
19 grievances.  Dkt. #19 at 3-4.  The Court agrees.

20       "The Supreme Court has described the right to petition as 'among the most precious
21 of the liberties safeguarded by the Bill of Rights' and 'intimately connected, both in origin
22 and in purpose, with the other First Amendment rights of free speech and free press.'"  *White*
23 *v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (quoting *United Mine Workers of Am., Dist. 12*
24 *v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967)).  "The Court has further established that the
25 right to petition extends to all departments of the government, including the executive
26 department, the legislature, agencies, and the courts."  *Id.* (citing *Cal. Motor Transp. Co. v.*
27 *Trucking Unlimited*, 404 U.S. 508, 510 (1972)).  "Under the Noerr-Pennington doctrine,
28 those who petition all departments of government for redress are generally immune from

1  liability." *Empress LLC v. City & County of S.F.*, 419 F.3d 1052,1056 (9th Cir. 2005); *see*
2  *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United*
3  *Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

4        Plaintiffs argue that immunity is not available in this case because "the Noerr-
5  Pennington doctrine is expressly limited to the application of the federal anti-trust statutes[.]"
6  Dkt. #40 at 2 (citing *Noerr* and *Pennington*). The Ninth Circuit has rejected this argument.
7  *Westlands Water Dist. v. Nat. Resources Defense Council*, 276 F. Supp. 2d 1046, 1053 (E.D.
8  Cal. 2003) (citing *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir.
9  2000)). "[T]he Noerr-Pennington doctrine is not merely a narrow interpretation of the
10 Sherman Act in order to avoid a statutory clash with First Amendment 'values.' Rather, the
11 doctrine is a direct application of the Petition Clause[.]" *Kottle v. N.W. Kidney Ctrs.*, 146
12 F.3d 1056, 1059 (9th Cir. 1998). Numerous courts, including this Circuit, have expanded the
13 doctrine to apply beyond the antitrust laws. *See Or. Natural Res. Council v. Mohla*, 944 F.2d
14 531, 533-34 (9th Cir. 1991); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 930 (9th Cir. 2006).
15 In short, "[w]hile the Noerr-Pennington doctrine originally arose in the antitrust context, it
16 is based on and implements the First Amendment right to petition and therefore, with [the]
17 exception [of 'sham' petitions], applies equally in all contexts." *White*, 227 F.3d at 1231; *see*
18 *also Boulware v. Nev. Dep't of Human Res.*, 960 F.2d 793, 800 (9th Cir. 1992) ("[T]he First
19 Amendment rationale of the Noerr-Pennington doctrine extends beyond antitrust suits to
20 civil rights actions as well."). In short, "Noerr immunity bars any claim, federal or state,
21 common law or statutory, that has as its gravamen constitutionally-protected petitioning
22 activity." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 956 (S.D. Cal. 1996).

23       *Noerr* recognized what has come to be known as the "sham" exception: situations
24 where petitioning activity, "ostensibly directed toward influencing governmental action, is
25 a mere sham to cover what is actually nothing more than an attempt to interfere with the
26 business relationships of a competitor[.]" 365 U.S. at 144. The scope of the sham exception
27 depends on the type of government entity involved. *See Kottle*, 146 F.3d at 1060. Where,
28 as here, the entity is a non-judicial political body, "the sham exception is extraordinarily

- 4 -

narrow." *Id.* at 1061.

Rural/Metro filed a letter with the City regarding the policies and procedures of its fire department. The Court concludes that this petitioning activity was no sham. "The 'sham' exception to *Noerr* encompasses situations in which persons use the governmental *process* – as opposed to the *outcome* of that process – as an anticompetitive weapon." *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991) (emphasis in original). The harm to Plaintiffs in this case – unjustified investigations and wrongful termination – was caused by the outcome of the petitioning process, not by any abuse of that process by Rural/Metro. *See* Dkt. #6 ¶¶ 29-31. Plaintiffs therefore have "failed to allege direct injury from the process, rather than the outcome, as required by *Noerr* and *Omni*." *Manistee*, 227 F.3d at 1095.

Because Plaintiffs' allegations do not place Rural/Metro's action within the sham exception, the action is protected by Noerr-Pennington "no matter what [Rural/Metro's] motives were." *Empress*, 419 F.3d at 1057. The Court will grant Rural/Metro's motion with respect to the remaining claims (Counts III-IV, VI-X, XV-XVII). *See id.* (filing of letter requesting city officials to make a zoning determination regarding the plaintiffs' hotel was protected petitioning activity); *Affordable Housing Dev. Corp. v. City of Fresno*, 433 F.3d 1182 (9th Cir. 2006) (defendant was immune from suit where his public opposition to the plaintiffs' planned housing project "amounted to petitioning the city counsel"); *Evers v. County of Custer*, 745 F.2d 1196, 1204 (9th Cir. 1984) (complaints to county commissioners about the closing of a road fell "within the first amendment's protection"). Given this ruling, the Court need not address Rural/Metro's alternative argument that the Court should decline to exercise supplemental jurisdiction over the state law claims. *See* Dkt. #19 at 4-5.[2]

---

[2] Plaintiffs' reliance on *Venetian Casino Resort, L.L.C. v. NLRB*, 484 F.3d 601 (D.C. Cir. 2007), is misplaced. *See* Dkt. #40 at 2. *Venetian* denied Noerr-Pennington immunity because the conduct at issue was not even "incidental" to petitioning activity. 484 F.3d at 613 (distinguishing *Sosa*, 437 F.3d at 935-37). In this case, Rural/Metro's letter to the City constitutes direct petitioning of government. *See Empress*, 419 F.3d at 1057.

- 5 -

1  **V.     The City's and the Torres's Motion to Dismiss.**

2        Prior to commencing this action, Plaintiffs submitted a notice of claim to the City
3  pursuant to A.R.S. § 12-821.01.  Dkt. #1 ¶ 7, at 26-29.  This statute requires anyone with a
4  claim against a public entity or public employee to file a notice of the claim with the entity
5  or employee prior to initiating suit.  *See Deer Valley Unified Sch. Dist. v. Houser*, 152 P.3d
6  490, 491 ¶ 1 (Ariz. 2007) (en banc).  The statute provides that the notice "shall contain facts
7  sufficient to permit the public entity or public employee to understand the basis upon which
8  liability is claimed."  A.R.S. § 12-821.01(A).  The statute further provides that the notice
9  shall "contain a specific amount for which the claim can be settled and the facts supporting
10 that amount."  *Id*.  "The purpose of [the] statute is to give [the public entity or public
11 employee] notice of a claim, an opportunity to assess the claim and the potential for liability,
12 and a chance to settle the claim before an action is filed in court."  *Barth v. Cochise County*,
13 138 P.3d 1186, 1189 ¶ 9 (Ariz. Ct. App. 2006); *see Houser*, 152 P.3d at 492 ¶ 6.

14       The City and the Torres Defendants argue that Plaintiffs' state law claims are barred
15 because their notice of claim does not comply with A.R.S. § 12-821.01(A).  Dkt. #22.
16 Plaintiffs contend that the statute is unconstitutional and that their notice complied with the
17 statute.  Dkt. #43.

18       **A.     Is the Notice of Claim Statute Unconstitutional?**

19       The anti-abrogation clause of the Arizona Constitution provides that "[t]he right of
20 action to recover damages for injuries shall never be abrogated, and the amount recovered
21 shall not be subject to any statutory limitation." Ariz. Const. art. XVIII, § 6.  Plaintiffs argue
22 that the notice of claim statute operates as an unconstitutional abrogation "in so far as it bars
23 Plaintiffs' right to recover damages."  Dkt. #43 at 4.  But the statute itself neither abrogates
24 the right to recover damages nor limits the amount of recovery.  Rather, the statute  merely
25 requires the claimant to provide the factual basis of the claim to "ensure that government
26 entities will be able to realistically consider [the] claim [prior to suit]."  *Houser*, 152 P.3d at
27 493 ¶ 9.

28       Moreover, Plaintiffs' argument fails to consider that "the Arizona Constitution

- 6 -

1 specifically empowers the legislature to enact statutes of limitations and procedures that may 2 treat lawsuits against the state differently from other lawsuits." *Stulce v. SRP Agric.* 3 *Improvement & Power Dist.*, 3 P.3d 1007, 1013 ¶ 22 (Ariz. Ct. App. 1999).  The Arizona 4 Constitution states that the legislature shall "'direct by law in what manner and in what courts 5 suits may be brought against the state.'" *Id.* (quoting Ariz. Const. art. IV, pt. 2, § 18).  "This 6 provision applies to suits against [the City], a municipal corporation, as a 'subdivision of the 7 State.'" *Id.* (citation omitted).  Plaintiff has not shown that the legislature "exceed[ed] the 8 authority granted it by article IV, part 2, section 18 when it adopted [the notice of claim 9 statute]." *Clouse v. State*, 16 P.3d 757, 764 ¶ 24 (Ariz. 2001) (en banc); *see Stulce*, 3 P.3d 10 at 1012 ¶ 18 ("[S]tatutes are presumed to be constitutional and the party making the 11 constitutional challenge bears the burden of demonstrating that it is unconstitutional.").

12 Plaintiffs further argue that the statute is unconstitutionally ambiguous because the 13 use of the word "facts" makes it difficult for a person to know what information must be 14 provided to a government entity for a claim to be valid. Dkt. #43 at 4-5.  The Court finds this 15 argument unpersuasive.  "Compliance with the [notice of claim] statute is not difficult[.]" 16 *Houser*, 152 P.3d at 493 ¶ 9.  The "facts" supporting a claim are simply "the actual or alleged 17 event[s] or circumstance[s]" giving rise to the claim. *Black's Law Dictionary* 610 (7th ed. 18 1999); *see Stulce*, 3 P.3d at 1010 ¶ 9 (undefined terms are generally given their commonly 19 accepted meaning).  The notice of claim statute is not unconstitutionally ambiguous. *See id.* 20 at 1013 ¶ 20.

21 **B.  Does Plaintiffs' Notice of Claim Comply with the Statute?**

22 Defendants argue that Plaintiffs' notice of claim contains insufficient facts supporting 23 Plaintiffs' theories of liability and amount claimed. Dkt. #22.  Plaintiffs disagree, contending 24 that the notice provides a sufficient factual basis under A.R.S.§ 12-821.01(A). Dkt. #43. 25 The Court concludes that the notice does not comply with the statute because it omitted facts 26 supporting the amount of the proposed settlement.  The Court therefore will not address 27 Defendants' argument that the notice contains insufficient facts supporting Plaintiffs' 28 theories of liability.

- 7 -

A notice of claim "shall . . . contain a specific amount for which the claim can be settled and *the facts supporting that amount*." A.R.S. § 12-821.01(A) (emphasis added). This statutory obligation "requires that claimants explain the amounts identified in the claim by providing the government entity with a factual foundation to permit the entity to evaluate the amount claimed." *Houser*, 152 P.3d at 493 ¶ 9.   Requiring claimants to state the facts in this fashion "ensures that claimants will not demand unfounded amounts that constitute 'quick unrealistic exaggerated demands.'" *Id.* (citation omitted).

The notice of claim in this case provides a summary of Plaintiffs' claims and the following settlement demand:

> In consideration of the foregoing, [Plaintiffs'] are willing to settle this matter with the City by the City paying [Plaintiffs] a lump sum of $100,000.00 paid to each for all damages and $20,000.00 paid to each in a lump sum for attorney's fees and costs.  Therefore, the total settlement [Plaintiffs] will accept for their claims against the City is $120,000.00 paid to each [Plaintiff], making the grand total of $240,000.00.

Dkt. #1 at 29.  The notice contains no indication of how Plaintiffs reached the "lump sum" figures of $100,000 and $20,000, as opposed to an other conceivable settlement values.  *See Bamonte v. City of Mesa*, No. CV-06-01860-PHX-NVW, 2007 WL 2022011, at *6 (D. Ariz. July 10, 2007).  Moreover, the notice makes clear that the $100,000 amount is for "all damages" sustained by each Plaintiff. Plaintiffs have asserted fifteen state law claims against Defendants. *See* Dkt. #6.  Absent some factual basis for the settlement amounts, Defendants could not properly evaluate these claims.  Defendants had no way of knowing whether the amounts were realistic demands or "quick exaggerated demands." *See Houser*, 152 P.3d at 493-94 & n.3 (noting that "the claim letter [did] not provide *any* facts supporting the claimed amounts for emotional distress and for damages to [the plaintiff's] reputation").  Because Plaintiffs' notice does not comply with A.R.S. § 12-821.01(A), the Court will grant the City's and Torres's motion and dismiss the state law claims against them. *See Bamonte*, 2007 WL 2022011, at *6-7 (dismissing state law claim where the notice provided no facts supporting

the settlement amount).[3]

## VI. Defendant CT Corporate System.

CT Corporation System is the statutory agent for Rural/Metro in Arizona. *See* Dkt. ##6 ¶¶ 11-14, 19 at 7. The Court will dismiss CT Corporation System from this action because the amended complaint asserts no claim for relief against it. *See* Dkt. ##6, 40 at 4.

**IT IS ORDERED:**

1. The Rural/Metro Defendants' motion to dismiss (Dkt. #19) is **granted**.
2. The City's and the Torres's motion to dismiss (Dkt. #22) is **granted**.
3. Defendant CT Corporate System is **dismissed**.

DATED this 15th day of November, 2007.

*David G. Campbell*
United States District Judge

---

[3] Plaintiffs reliance on *Castaneda v. City of Williams*, No. CV-07-00129-PCT-NVW, 2007 WL 1713328 (D. Ariz. June 12, 2007), is misplaced. The plaintiffs in *Castaneda*, unlike Plaintiffs in this case, provided some factual support for the settlement amount. 2007 WL 1713328, at *4.

- 9 -