**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Estrada and Carman Estrada, husband and wife; and Othon Luna and Estella Luna, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>City of San Luis, an Arizona municipal corporation; and Rafael Torres, in his personal capacity,<br><br>Defendants.<br>_____<br>Frank Estrada and Carman Estrada, husband and wife; and Othon Luna and Estella Luna, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>City of San Luis, an Arizona municipal corporation; Rural/Metro Fire Department Inc., an Arizona corporation; Rural/Metro Protection Services, Inc., an Arizona corporation; Rural/Metro (Delaware) Corporation (FN), a Delaware corporation; Rafael Torres; Juan Carlos Escamilla; Lee Maness; and Gabriel Jimenez,<br><br>Defendants.<br>_____ | Consolidated Actions<br><br>No. CV-07-1071-PHX-DGC (Lead Case)<br>No. CV-08-0945-PHX-DGC (Member Case)<br><br>**ORDER** |

On May 29, 2007, Plaintiffs commenced an action in this Court against the City of San Luis, Rafael Torres, and several other defendants (Case No. CV-07-1071-PHX-DGC) ("First Action"). Nearly a year later, on May 19, 2008, Plaintiff filed another action in this Court against the defendants named in the First Action and three other defendants, Juan Escamilla, Lee Maness, and Gabriel Jimenez (Case No. CV-08-0945-PHX-ROS) ("Second Action"). The actions have been consolidated. Dkt. #22 (CV-08-0945); Dkt. #89 (CV-07-1071).

Defendants City of San Luis, Rafael Torres, Juan Escamilla, and Gabriel Jimenez have filed a motion to dismiss the Second Action as impermissibly duplicative of the First Action. Dkt. #15 (CV-08-0945).[1] A response and reply have been filed. Dkt. ##19, 21. The Court will grant the motion.

**I.   Background.**

Plaintiffs Frank Estrada and Othon Luna worked for the City of San Luis fire department. Estrada was a Battalion Chief and Luna was the Fire Chief. Plaintiffs were terminated in 2006.

Plaintiffs commenced the First Action by filing a complaint against the City of San Luis, Rafael Torres, CT Corporate System, and various Rural/Metro entities. Dkt. #1 (CV-07-1071). Plaintiffs' amended complaint asserts fifteen state law claims, a federal civil rights claim, and a request for punitive damages under federal law. Dkt. #6 ¶¶ 32-86.

In an order dated November 15, 2007, the Court dismissed CT Corporate System from this action because the complaint asserted no claim for relief against it, dismissed all claims asserted against Rural/Metro based on Noerr-Pennington immunity, and dismissed all state law claims asserted against the City and Torres based on Plaintiffs' failure to comply with Arizona's notice of claim statute. Dkt. #45.

On April 22, 2008, the Court held a conference call with the parties concerning which claims remain in the case. Dkt. #69. The parties briefed the issue (Dkt. ##76, 79-81), and

---

[1] The other defendants named in the Second Action have not been served with process.

- 2 -

Plaintiffs filed a motion for leave to file a second amended complaint and a motion to amend the scheduling order ("motion to amend") (Dkt. #77). In an order dated May 15, 2008, the Court denied the motion to amend and concluded that the remaining claims are a federal employment discrimination claim and a request for punitive damages under federal law. Dkt. #85.

Plaintiffs filed the Second Action four days later. Dkt. #1 (CV-08-0945). The suit asserts eight claims: retaliation in violation of 42 U.S.C. §§ 1981 and 1983, unconstitutional denial of First Amendment interests, unconstitutional denial of property interests, invasion of privacy, false light invasion of privacy, intentional interference with a contractual relationship, punitive damages under federal law, and loss of consortium. *Id.* ¶¶ 80-110.

**II.     Discussion.**

Defendants argue that the Second Action should be dismissed because it is impermissibly duplicative of the First Action. Dkt. #15. Despite the fact that Plaintiffs did not oppose consolidation of the two actions (*see* Dkt. #86 at 2), Plaintiffs now contend that the suits are "significantly different" in that they involve different parties and legal theories. Dkt. #19.

"Plaintiffs generally have 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same parties.'" *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (citation omitted). Rather, plaintiffs are "required to bring all of [their] claims against the defendants and their privies arising from a single cause of action in one suit." *Id.* at 688 n.1. Where separate actions are duplicative, the court has discretion to dismiss the second action with prejudice. *Id.* at 688 & n.1. "[I]n assessing whether the second action is duplicative of the first, [courts] examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Id.* at 689.

**A.     Same Causes of Action.**

Courts examine four factors to determine whether causes of action asserted in separate cases are the same:  (1) whether rights or interests established in the first action may be

- 3 -

1  destroyed or impaired by prosecution of the second action, (2) whether substantially the same
2  evidence is presented in the two actions, (3) whether the actions involve infringement of the
3  same right, and (4) whether the actions arise out of the same transactional nucleus of facts.
4  *Id.* The last of these factors "'is the most important.'" *Id.* (quoting *Costantini v. Trans
5  World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1992)).  The Court will address this factor
6  first.

Both the First and Second Actions allege the following facts:  From 1994 through 1998, Rafael Torres worked for the City's fire department and was supervised by Plaintiffs Frank Estrada and Othon Luna (Dkt. #6 ¶ 23 (CV-07-1071); Dkt. #1 ¶ 31 (CV-08-0945)). Plaintiffs terminated Torres from his job in the fire department (¶¶ 24, 32).  Torres subsequently was elected to the City Council (¶¶ 25, 41).  Rural/Metro had a contract with the City to provide ambulance services (¶¶ 18, 21).  Torres directed Rural/Metro to file a complaint with the City falsely accusing Plaintiffs of violating the terms of the contract (¶¶ 27, 55).  The filing of the complaint was to be a *quid pro quo* for the City's renewal of the Rural/Metro contract (¶¶ 28, 56).  Rural/Metro accordingly sent a letter to the City asserting that the fire department, under Plaintiffs' supervision, was violating the terms of the contract between Rural/Metro and the City (¶¶ 29, 54).  In response to the letter, the City began a "results-oriented" investigation that ultimately led to Plaintiffs' terminations (¶¶ 30, 62). The City also referred the matter to the Arizona Attorney General for criminal investigation, but no criminal conduct was found (¶¶ 31, 70).  Torres made false and misleading statements that harmed Plaintiffs (¶¶ 55, 93).

These alleged facts are common to all claims asserted in both the First and Second actions. *See id.* at 4. It therefore is "clear that the two actions share a common transactional nucleus of facts." *Adams*, 487 F.3d at 690; *see Haywood v. Bedatsky*, CV-05-2179-PHX-DGC, 2007 WL 2692975, at *2 (D. Ariz. Sept. 10, 2007) ( plaintiff's actions arose out of the same nucleus of facts because they related to his employment and were based on the plaintiff's belief that he was discriminated and retaliated against); *Graves v. Peninsula Auto Machinists Lodge No. 1414*, No. C-06-0929 SC, 2006 WL 2130786, at *2 (N.D. Cal. July

- 4 -

28, 2006) (plaintiff's actions arose out of the same nucleus of facts because they were based on the alleged discriminatory events and acts leading up to the plaintiff's termination and the termination itself). The fact that Plaintiffs have asserted different legal theories in the two actions does not change this conclusion. *See Adams*, 487 F.3d 684 (noting that the plaintiff asserted new legal theories in the second action); *see also Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) ("Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding[.]").

The first factor for determining whether causes of action are the same concerns whether rights or interests established in the first action may be destroyed or impaired by prosecution of the second action. There clearly is a risk of inconsistent results if Plaintiffs are permitted to proceed with both the First and Second Actions. Defendants may be found to have terminated Plaintiffs based on there age in the First Action, and to have terminated Plaintiffs in retaliation for exercising their First Amendment rights in the Second Action. In addition, prosecution of the Second Action would render meaningless the Court's order denying Plaintiffs leave to amend the complaint in the First Action. *See Oxbow Energy, Inc. v. Koch Indus., Inc.*, 686 F. Supp. 278, 282 (D. Kan. 1988) (noting the "absurd" result if the plaintiffs were allowed to split their claims and thereby reverse the decision to deny their motion to amend); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, MDL No. 765 PHX RCB, 1991 WL 425379, at *2 (D. Ariz. Jan. 7, 1991) (citing *Oxbow*).

The second factor considers whether substantially the same evidence is presented in the two actions. The evidence need only be similar, not identical, for this factor to apply. *See Forest Guardians v. Thomas*, 967 F. Supp. 1536, 1549 (D. Ariz. 1997). Here, "[t]here is no doubt there is an overlap of evidence[.]" *Id.* Both actions will involve the presentation of evidence regarding the City's motive for terminating Plaintiffs and the existence and veracity of the alleged tortious statements made by Torres. While additional evidence would be presented in the Second Action, such evidence "'is scarcely enough to establish that the [Second Action] arises out of a different 'transactional nucleus of facts' than that which

1  generated the [First Action].'" *Adams*, 487 F.3d at 690 (quoting *Costantini*, 681 F.2d at
2  1202); *see Int'l Union of Operating Eng'rs-Employers Construction Indus. Pension v. Karr*,
3  994 F.2d at 1426, 1430 (9th Cir. 1993) ("The fact that some different evidence may be
4  presented in this action . . . does not defeat the bar of res judicata.").

5  The final factor concerns whether the actions involve infringement of the same right.
6  Both actions involve Plaintiffs' interests in continued employment with the City, their right
7  to be free from violations of federal civil rights, and their right to privacy. *See* Dkt. #6 ¶¶
8  42-47, 51-53, 60-65, 74-76; Dkt. #1 ¶¶ 80-103. Moreover, to the extent the two actions
9  involve distinct rights, "this factor alone does not differentiate the causes of action." *Adams*,
10 487 F.3d at 691. As noted above, "the most significant factor is that the causes of action
11 arise from a common nucleus of facts." *Id.*

12 In summary, it is clear that the claims asserted in the Second Action arise out of the
13 same nucleus of facts alleged in the First Action, that the two actions involve the same rights,
14 that a judgment in the First Action may be impaired by a judgment in the Second Action, and
15 that substantially the same evidence would be presented in both actions. The Court therefore
16 concludes that "the two suits involve the same cause of action." *Adams*, 487 F.3d at 691.

17 **B.  Same Relief.**

18 There is no question that Plaintiffs seek the same relief in both suits – compensatory,
19 statutory, and punitive damages. Dkt. #6 at 13, ¶¶ 1-3; Dkt. #1 at 17-18, ¶¶ 1-3.

20 **C.  Same Parties or Privies.**

21 Plaintiffs note that the Second Action names three additional defendants: Juan
22 Escamilla, the Mayor of the City; Lee Maness, the former City Administrator; and Gabriel
23 Jimenez, the Director of Human Resources for the City. Dkt. #19 at 4; *see* Dkt. #1 ¶¶16-18.
24 These new defendants are in privity with the City because the City can be said to "virtually
25 represent" them in the First Action.

26 "The necessary elements of virtual representation are an identity of interests and
27 adequate representation." *Adams*, 487 F.3d at 691. An additional feature is the existence of
28 a "close relationship" between the parties. *Id.* (citation omitted); *see Tahoe-Sierra*

1  *Preservation Council*, 322 F.3d at 1082.  Plaintiffs do not dispute that the City and the new
2  defendants have a close relationship.  Nor do Plaintiffs dispute that the interests of the new
3  defendants are aligned with the City and the City will adequately represent those interests in
4  the First Action.  The Court concludes that Defendants Escamilla, Maness, and Jimenez are
5  in privity with the City.  *See Adams*, 487 F.3d at 691 (finding privity where the new
6  defendants were employees of the original defendant at the time of the events described in
7  the complaint).

8  **D.     Conclusion.**

9  The record clearly demonstrates that the First and Second Actions are duplicative.
10 Under the present circumstances, the Court concludes that dismissal of the Second Action
11 with prejudice is appropriate.  The Court denied Plaintiffs leave to amend the complaint in
12 the First Action because the motion to amend was untimely and Plaintiffs failed to
13 demonstrate good cause to amend the Court's scheduling order.  Dkt. #85 at 4-6.  Plaintiffs
14 filed the Second Action in an attempt to avoid the consequences of their own delay and to
15 circumvent the Court's denial of their untimely motion to amend.  *Compare* Dkt. #1 (CV-08-
16 0945) *with* Dkt. #78 (CV-07-1071).  The fact that Plaintiffs were "'denied leave to amend
17 does not give [them] the right to file a second lawsuit based on the same facts.'"  *Adams*, 487
18 F.3d at 688 (citation omitted); *see In re Dual-Deck Video Cassette Recorder*, 1991 WL
19 425379, at *2 ("A decision denying leave to amend that was based on prejudice to the
20 defendant and dilatoriness in bringing the claims plaintiff sought to add are the sort of
21 grounds that should bar bringing those claims in a later action."); *Oxbow*, 686 F. Supp. at 282
22 ("[T]he court cannot condone plaintiffs' practice of running to a different city within the
23 district and filing a new case every time a judge in a prior action makes a ruling adverse to
24 that litigant's position.").  Moreover, dismissal of the Second Action "promotes judicial
25 economy" and "serve[s] the societal interest in bringing an end to disputes."  *Adams*, 487
26 F.3d at 692-93.

27 **IT IS ORDERED:**

28 1.     Defendants' motion to dismiss (Dkt. #15) is **granted**.

2. Plaintiffs' Second Action (No. CV-08-945-PHX-DGC) is **denied with prejudice**.

DATED this 6th day of August, 2008.

David G. Campbell
United States District Judge